## Walters et al. v. First Nat. Bank of Jackson et al.

(Decided March 11, 1938.)

E. C. HYDEN for appellants.

GRANNIS BACH, OLLIE J. COCKRILL and A. F. BYRD for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming in part and reversing in part.

In a suit brought by the appellee, First National Bank of Jackson, Ky., in the Breathitt circuit court September 26, 1935, it alleged its incorporation as such "under and by virtue of the laws of the Congress of the United States" and that, on May 9, 1922, the appellant J. M. Walters (defendant below and hereinafter so referred to) and wife, Emily Jane Walters, had, in consideration of a loan made the defendant in the sum of $5,875 and to secure its payment, executed and delivered to it their mortgage upon two certain therein described tracts of land, situated in Breathitt county.

Further, it alleged that the defendant had purchased at a decretal sale, directed made by the Breathitt circuit court in the case of Scott Cope et al. v. Elizabeth Parrott's Heirs, a certain tract of land located on Frozen creek, Breathitt county, a portion of which constitutes the tract described in the mortgage sought to be foreclosed and the petition as tract No. 2.

It appears that the defendant had procured this loan from the bank for making the down payment required on the purchase price of this Parrott tract of land, but that, before putting the same in lien of mortgage to the bank to secure its loan, he had sold therefrom certain parcels thereof to third parties, which were, by the terms of the mortgage, expressly excluded therefrom. Further, the commissioner's deed, executed to Walters to this Parrott land on April 10, 1922, recited that the interest of certain of these Elizabeth Par-

rott heirs (those under 21 years of age) it was adjudged should not be paid, until or except as they arrived at the age of 21 years, and that the interest of each of them should remain a lien on the land until so paid them.

It further appearing that, at the time of the bringing of the instant action, the defendant owed certain of these Parrott infant heirs for their adjudged shares or interests in the land, they were made parties defendant, as were also these other parties who had bought certain parcels of this Parrott estate land from the defendant, who claimed that same were, under their contracts of purchase, to be excluded from the mortgage given by him, in part on the Parrott land, to the bank.

It was further provided by the terms of the defendant's mortgage, given the bank, that it should secure all extensions or renewals of his said note of $5,875, in whole or in part, and additional sums loaned to Walters, not to exceed the aggregate sum of $10,000. Further, the petition alleged that on June 14, 1935, the defendant Walters had executed and delivered to plaintiff his certain promissory note in the sum of $3,036, with interest at the rate of 6 per cent. per annum from and after maturity (September 1, 1935) until paid, and that said note, so given, was a renewal in part of the original $5,875 note of May 9, 1922, referred to in the mortgage; also that certain further notes, all coming within the aggregate allowed by the mortgage, in the sums of $650, $130, and $37, respectively, had been in February and June, 1935, executed and delivered it, bearing a like 6 per cent. rate of interest from their maturity as the $3,036 renewal note, no part of which had been paid, except certain named small amounts, which were duly credited on the last-named note for $37; also, that plaintiff had paid taxes on the land embraced in the mortgage for the year 1931 in the sum of $90.54, which defendant had refused to pay, all of which amounts, less credits to which defendant is entitled, plaintiff here seeks to recover, by enforcing its mortgage lien against the land involved.

Further, the petition set out that S. K. McGuire, Roger McGuire, and certain other of the named defendants were infant heirs at law of Elizabeth Parrott, who, as such, had inherited certain therein recited specific interests in the Parrott land, in part being tract No. 2 of the mortgage here involved, which defendant had

executed the bank, subject to the interests adjudged these infant Parrott heirs therein, and herein named as defendants.

The petition concluded with a prayer for judgment against the defendant mortgagor for the aggregate amount of his notes and accrued interest, and taxes paid by plaintiff, as set out above, and for the enforcment of its mortgage lien by a sale of the mortgaged property and for all proper orders of the court for the enforcement of all liens (inclusive of those of the infant heirs) outstanding against the land.

The defendant Parrott heirs, by guardian, filed answer, setting out the respective shares of each of them, the respective amounts which they should receive out of the land's sale proceeds when they should arrive at age, and that one of them only had become 21, but they nowhere alleged nor claimed that they were now entitled to payment of their interests, before becoming of age, and their adjudged lien claims on the land.

The defendant J. M. Walters, by answer and counterclaim, admitted the execution of the notes sued on, but denied that any part of same was owing or had not been paid; also, he alleged that plaintiff was a national bank, "created under the United States banking laws" and was such at all times mentioned in the petition; that at the time he executed the first note, as set out in the petition, "the plaintiff charged for said loan and inserted in said loan and note a provision requiring him to pay a usurious rate of interest, largely in excess of the legal rate of 6%; that for many years, and in fact up until the execution of the note (for $3,096.00) sued on herein, he paid to the plaintiff and it collected from him said usurious interest;" that, in addition thereto, he made large payments, in stated amounts, on said note and had also turned over to the bank rentals of certain oil leases, for the amount of which he was entitled to credit on his debt.

Further, he pleaded that, "by virtue of the banking laws of the United States and particularly United States Revised Statutes, sec. 5198 [12 U. S. C. A. sec. 86] it is made unlawful and the plaintiff was and is forbidden to charge or receive or collect a greater rate of interest for the loan or use or forbearance of money than six per cent. per annum, and by said statutes it is

provided that if a national bank shall so do, it shall forfeit all interest on said loan''; further, that, under said statutes, he is entitled to have it adjudged that the plaintiff is not entitled to any interest on said original loan and that all payments made thereon by or for him shall be applied to the payment of the principal sum, and that, when so done, he has more than paid his indebtedness; that, in fact, there would be a balance due him of not less than $1,000.

Further, the codefendants and coappellants, Charlie Walters, Burney Walters, and the codefendant Tom Lee Holbrooks (not here an appellant) filed demurrer to so much of the petition as seeks a judgment in favor of the Parrott heirs for the interests alleged to be due them, because the plaintiff has no power or authority to maintain an action or obtain a recovery for them and states no cause of action in behalf of said heirs. Separately answering, the codefendant Charlie Walters alleged that he was the owner of a certain therein described parcel or tract of the Parrott estate land, which before the mortgage sued on was executed had been purchased by him from his father, the codefendant J. M. Walters, for the sum of $700, which amount he had borrowed from the plaintiff bank and had executed to it his note therefor, which he later paid with interest.

Also, he alleged that he did not know whether his said tract is included within the second boundary of the mortgage (tract No. 2) described in the petition, but is advised that it is not; but, if it is, that plaintiff is not, under its mortgage it seeks to foreclose, entitled to any lien thereon, for the reason that it knew, when taking the mortgage, of his purchase of this parcel of the Parrott land, at a fair price, and that it had acquiesced in his purchase of it and had received the purchase price paid therefor.

Also, the coappellant Burney Walters alleged in the answer that he, too, was the owner of a certain described parcel of Parrott land (described as tract No. 2 in the mortgage), which he had purchased under an agreement with the plaintiff bank that, when he paid the purchase price thereof over to it and same was deeded to him, it would release its mortgage lien on same; that the purchase price of said parcel was $500, which amount he paid to his father, the defendant J. M. Walters, who in turn paid the said amount for him over

to the plaintiff bank, by reason of which he was entitled to have the mortgage of the bank canceled as to his said parcel, or the same excluded from it.

Also, Tom Lee Holbrooks joined in this answer, alleging that he also was the owner of the two tracts specifically described in his answer, which he claimed he had purchased, of the Parrott land, but this claim we will not discuss here, as he has presented no appeal.

The answer concludes with a prayer for judgment dismissing the petition as to each of the three tracts owned by these three codefendants mentioned, and as to all of the land embraced in the mortgage, except that now owned by the defendant J. M. Walters, and for judgment dismissing so much of the petition as seeks a recovery and sale of the land for present payment of the interests of the heirs at law of Elizabeth Parrott, whose lien shares were adjudged not to be paid them until and except as they respectively became of age.

By amendment to its petition, plaintiff alleged that all of the note for $37 had been fully paid; also, that on the note of June 14, 1935, for the sum of $130, executed the bank by J. M. Walters, it had received certain named further payments, reducing its amount owing to the sum of $110.44; and by its second paragraph it was alleged that on June 15, 1935, Finlay Walters, J. M. Walters, and Barnet B. Bach had executed to plaintiff their promissory note, due 4 months after date, in the sum of $50, with interest at the rate of 6 per cent. from maturity, of which no part had been paid, and prayed judgment against J. M. Walters for the amount of this note and interest, in addition to the amount of the other notes set up in the petition.

A reply filed by the plaintiff joined issue upon the affirmative allegations made by the defendants.

Upon submission of the cause for judgment upon these issues joined, the court adjudged in part that the plaintiff bank recover of the defendant J. M. Walters the sum of the note sued on of $3,036, with interest thereon of 6 per cent. per annum from September 1, 1925, until paid, less a deduction in the sum of $825, adjudged to have been usury paid in these transactions had between the plaintiff and defendant, and further adjudged the bank recovery of the amount shown owing on each of the other notes sued on, with 6 per cent.

interest from date due. Further it adjudged that the plaintiff has a lien against the two tracts of land described in its mortgage, excluding from the second tract certain portions thereof conveyed and paid for by certain named third parties and described in their certain named deeds as "exclusions." Further, it adjudged that the defendant infant heirs at law of Elizabeth Parrott had each a lien against the said described tract No. 2 of land in the respective amounts stated, according to their adjudged share or interest therein, with interest from April 10, 1922, until paid, and that the lien of said heirs was superior to that of the First National Bank "as against all of the Parrott land thirdly above described," which was not included in tract No. 2 of the mortgage as above described. Further it adjudged that the plaintiff and Parrott heirs named were entitled to have their liens of mortgage enforced, and accordingly ordered its master commissioner to first offer for sale tracts Nos. 1 and 2, as embraced and described in the bank's mortgage, and that if the said two tracts, outside of the exclusions therein set forth, did not bring a sufficient amount to pay off all the liens and debts adjudged, the commissioner was to sell at the same time and upon the same terms so much of the third tract, described as being outside of tract No. 2, as would be sufficient to produce enough to pay any balance that was found due and owing the said named infant defendants.

The defendants J. M. Walters, Charlie Walters, and Burney Walters have prosecuted an appeal from all of the foregoing judgment, while the plaintiff bank has prosecuted a cross-appeal from so much of it as allows J. M. Walters credit for $825 on account of usury.

Directing now our attention to the consideration and disposition of the contentions and criticism of this ruling presented by appellants, it may first be noted that Charlie Walters complains of the court's alleged error in failing to exclude from the tracts directed sold the small parcel of the Parrott land he claims to have bought from his father, as the purchaser at the decretal sale thereof, which he claims is both outside the boundary of the mortgaged tract No. 2, as described in the mortgage, and also that it was bought, paid for and deeded him by his father, with the consent of the bank, before tract No. 2 was ever mortgaged to the bank and

that therefore same should be treated as an exclusion therefrom.

When testifying, he states that while this parcel of the Parrott land bought by him, he is advised, is not included within the boundary of tract No. 2 described in the mortgage, which has been directed sold for enforcement of the bank's mortgage lien against same, yet he borrowed $700 from the appellee bank for paying its purchase price. However he admits that he failed to pay the bank $240 of the $700 amount of his note, and states his father, J. M. Walters, agreed to pay same for him. This unpaid amount of the note appellee represents is embraced in the $3,096 renewal note, here sued on.

As it is not contended that the bank agreed to exclude, as not embraced in its mortgage of tract No. 2, any of the land sold by its purchaser, J. M. Walters, except such as had been deeded to and paid for by such purchasers and the purchase price thereof paid over to the bank, we are of the opinion that Charlie Walters was not in a position to demand that the land, claimed so bought by him, be adjudged to be an exclusion from the land embraced in tract No. 2, which the court has ordered sold for the satisfaction of the J. M. Walters note, for the reason that he, by his testimony, did not claim to have satisfied fully the payment conditions he states were required by the bank of the purchaser of any parcel of tract No. 2 before releasing it, which were that same was to be paid for in full and the said amount paid over to it upon its mortgage debt. He testified that he had failed to pay to the bank $240 of the $700 borrowed of it to pay for the parcel of land purchased by him. Further, he did not testify that such balance of $240 had ever been paid the bank, though its payment was assumed by his father for him. Therefore, we conclude the chancellor properly adjudged that the appellant Charlie Walters is not in a position to now insist that the bank's lien of mortgage be released as to this parcel of land claimed purchased by him, in that he has not performed the conditions agreed upon with the bank upon which its lien was to be released.

As to the claim of Burney Walters, he testifies that he bought a parcel of land, which perhaps lies within the boundary of the mortgaged tract No. 2, at a price of

$500, which he contends he paid to his father for payment to the bank. He testifies that he had first agreed to purchase a larger tract at the cost of $1,000, but that, finding himself unable to complete the purchase, he surrendered it and accepted a smaller parcel of the land at a price of $500, which amount he had paid his father on the price of the larger tract, and which was to be applied by his father as payment of the amount due and owing for the smaller tract. While he further testifies that his father, the defendant J. M. Walters, did pay this amount over to the bank, the officer of the bank does not so testify. Also the appellant admits that no deed to him therefor was ever made by his father and that the bank had never executed a release of its mortgage lien upon same. The officer of the bank, to whom he claims his father paid this $500, in testifying said he did not recall, nor did he have any information as to Burney Walters having bought this parcel of land or paid for it; that he did not recall that such amount was received by the bank therefor or that it had been paid over to the bank by his father in consideration of the bank's release of its lien upon the purchased land.

We conclude that this evidence amply supported the chancellor's finding and ruling on this claim presented by Burney Walters' appeal; that is, in declining to adjudge that either of these two tracts constituted exclusions from the land embraced in the mortgaged tract No. 2, which were ordered sold, not specifically but if in fact they were situated within tract No. 2, by the commissioner to enforce plaintiff's adjudged mortgage lien against same.

Now, turning our attention to the contention of appellant J. M. Walters, as it is pleaded by him in his answer and counterclaim, supra, wherein he avers that at the time he executed the first note in May, 1922, in the sum of $5,875, the plaintiff bank charged usurious interest for said loan and inserted a provision in his note taken therefor requiring him to pay a usurious rate of interest, and that for many years, in fact up until 1934, "he paid to the plaintiff and it collected from him said usurious interest"; that the plaintiff is a national bank, forbidden by section 5198, U. S. Revised Statutes, 12 U. S. C. A. sec. 86, to charge or collect a greater rate of interest for the use or forbearance of money loaned by it than 6 per cent.; and that by its collection of such larger amount of interest upon

said original note, executed in 1922, and its renewals during the 12 years following, the last being executed in 1934, when the 6 per cent. interest rate was restored on the notes executed it by him, it, as provided by the cited section of the statutes, forfeited all interest on said loan, with the result that all payments made thereon should have been applied to the payment of the principal debt. He alleges that, had same been done, he would be found not only to have fully paid the debt, but to have overpaid it in an amount not less than $1,000, which was owing him.

It is shown by indorsements on some of the renewal notes given in the course of these transactions that the payments made thereon were indorsed made on the principal of the debt rather than applied to the payment of the usurious interest, but such showing we conclude cannot be treated or held to overcome the express allegations contained in appellant's answer, that during the years in question or nearly up until the execution of the note sued on, he had paid to the plaintiff, and it had collected from him, the usurious interest.

The appellant in support of his contention cites and relies upon the recent case of Moss v. First National Bank of Horse Cave's Receiver, 251 Ky. 390, 65 S. W. (2d) 88.

The facts presented in the Moss Case as to the matter of the charged usurious interest are that:

> "Appellants filed their answer in which they admitted the execution of the note, but alleged that the transaction was usurious and asked the court to purge the transaction of usury and apply all payments made on the note from the date of its inception, to the principal indebtedness, which would leave a balance of $228.30. * * * They further pleaded in their answer that because of the illegal acts of the bank in charging usurious interest and contracting therefor, it thereby forfeited the entire interest and was entitled only to collect the principal sum. A demurrer was filed to the answer, which was overruled, whereupon appellee, plaintiff below, filed its reply, in which it denied, * * * that the bank had forfeited its right to collect legal interest on the said note of $3,000 on any renewals thereof, * * * [and] further specifically stated * * * that the defendants have not legally paid any in-

terest on said indebtedness, but have only contracted for interest."

It is apparent that the facts in the instant case are much different from those there presented, where usurious interest had only been contracted for in the $3,000 note and its renewals, rather than as here is the case where the usury is paid to and collected on the note or its renewals by the bank, as is specifically averred by the appellant in his answer in the instant case.

The cited section of the U. S. Revised Statutes, sec. 5198, 12 U. S. C. A. sec. 86, provides:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred."

In the Moss Case, supra, the court, in applying the provisions of the cited statute to the facts as pleaded in that case, said:

"It is argued for appellee that inasmuch as the note sued on contracted for legal interest only it is entitled to recover thereon. But this contention is not supported by the authorities on this subject. In Brown v. Marion National Bank, supra [169 U. S. 416, 18 S. Ct. 390, 42 L. Ed. 801] it is said:

" 'The forfeiture declared by the statute is not waived * * * by giving a separate note for the interest, or by giving a renewal note in which is included the usurious interest. No matter how many renewals may have been made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied on, and the matter is thus brought to the

attention of the court, lose the entire interest which the note carries or which has been agreed to be paid. By no other construction of the statute can effect be given to the clause forfeiting the entire interest which the note, bill, or other evidence of debt carries, or which was agreed to be paid, but which has not been actually paid.' "

Conceiving that the facts of the Moss Case came within the provision of the forfeiture clause of the statute, as one where excess interest was agreed to be paid but which had not actually been paid, the judgment of the lower court was reversed, with directions to sustain the demurrer to paragraph 2 of the reply.

Again was this same section of the U. S. Statutes considered and construed in the case of Owens v. National Bank of John A. Black, 252 Ky. 292, 66 S. W. (2d) 518, 520, wherein the further provision of this section of the statute was construed and surety on the note payable to a national bank held liable for full amount of renewal note on which no usurious interest was charged, though maker had paid usurious interest on original and previous renewal notes up to within 2 years of renewal note sued upon. There the court said:

"Defendant in this case himself paid no interest on the indebtedness of Mitchell at any time from its inception. He, therefore, occupies no position that would entitle him to recover double the amount of interest so paid, as is provided for in subdivision (b), supra, even if he had endeavored to do so in a separate independent action. However, he is further precluded from doing so, if otherwise entitled to that relief, because he did not commence his action for that purpose within two years from the time the usurious interest was paid, if it had been made by himself. He would, perhaps, have been entitled to a forfeiture of all the interest on the particular renewal note (the last one) upon which he was sued, if it had contained any usury; but he expressly averred that the agreement for a usurious rate of interest was abandoned about two years before that note was executed, and neither it nor any renewal during that period of abandonment contained or embodied any agreement to pay usury."

It appears the facts presented in the latter case

are particularly analogous with those here presented, where the appellant admits that, while he had paid usurious rates of interest upon the original and later renewal notes, the last renewal note executed for the remainder owing and unpaid upon the original note did not provide for the payment of usury.

It may be said in the instant case, as was indicated in the Owens Case, supra, that inasmuch as it is here both alleged and admitted by the bank that usury was in fact paid to and collected upon this original note and some of its renewals up to 1934 or nearly to the time of the execution of this last renewal note, the appellant might have sought to have recovered double the amount of interest so paid, as provided for in the statute, but he is yet here precluded from doing so, if otherwise entitled to that relief, because he did not commence his action for that purpose within 2 years from the time the usurious interest was paid. It is also true that the rule is, as stated with approval in the Owens Case, from the annotation contained in 13 A. L. R. 1244, that:

"The recovery of usury paid to national banks being controlled exclusively by the acts of Congress, no other remedy than that provided by Congress can be availed of. Consequently, since the federal statute allows nothing in the way of relief except an action of debt for twice the amount of the interest paid, usurious interest previously received by a national bank in the course of renewals of a series of notes, terminating in the one on which the action is brought, cannot be allowed by way of set-off or payment on the principal."

Therefore, governed by the provisions of this statute, which are alone here applicable to the determination of the question of the usury alleged paid to the bank in this case, we are constrained to hold that the lower court's judgment, wherein it directed a recovery by the bank of its debt sued on, without forfeiture of interest on account of usury paid it, and that its adjudged mortgage lien against the two tracts therein named be enforced by sale thereof for payment of same, is to such extent affirmed on the appeal, but to the extent that sale of tracts Nos. 2 and 3 (as described in the judgment) is directed for the premature payment of the liens held by the defendant Parrott heirs at law,

who have as yet not attained their majority and upon which event only, as set forth in the judgment ordering the sale of the Parrott estate lands, were they to be paid, the judgment is reversed on the appeal.

Further, we are of the opinion, for the reasons above stated, that the cross-appeal of the bank, insisting that the chancellor erred in adjudging a deduction of $825 from the amount of its adjudged recovery of the notes sued on, must be sustained, and the judgment is also to such extent reversed upon the cross-appeal, with the direction that the chancellor modify and correct his judgment in the respects indicated and enter a decree in harmony with this opinion.